UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAYAN ELASHI | : | Civil Action No. 4:09-CV-2201 |
| | : | |
| Petitioner, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | |
| MARY E. SABOL, | : | |
| JANET NAPOLITANO, | : | |
| JOHN T. MORTON, | : | |
| DAVID VENTURELLA, | : | |
| CHERYL CRENSHAW, and | : | |
| THOMAS DECKER | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM**

November 2, 2010

**BACKGROUND:**

Bayan Elashi filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. On March 18, 2010, the petition was granted by the Honorable Malcolm Muir, and the Bureau of Immigration and Customs Enforcement was ordered to release the petitioner from prison under conditions of supervised release. The case was subsequently reassigned to the undersigned judge.

Now before the court is petitioner's "Motion for Attorney Fees Pursuant to

1

EAJA." (Rec. Doc. No. 22). Opposing and reply briefs have been filed. Thus, the matter is ripe for disposition. Now, therefore, for the following reasons we will grant the motion, to the extent of the relief provided in this memorandum and the accompanying order.

**DISCUSSION:**

The motion presently before the court is a motion for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA") 28 U.S.C. 2412(d). To fully understand whether or not attorney's fees and costs should be paid by respondents, one must first understand the history of Elashi's petition for writ of habeas corpus.

Elashi was born in Palestine in 1955. During the Arab-Israeli War, he was sent to Egypt to attend boarding school. After he earned his bachelor's degree in Egypt, he moved to the U.S. on a student visa. In 1984, Elashi married a Jordanian citizen. They have five children, all United States citizens.

On October 6, 2006, Elashi was convicted of multiple violations of federal law. He served an 84-month sentence. After completing his sentence, on January 22, 2009, Elashi was taken into custody by the Bureau of Immigration and Customs Enforcement ("ICE") pursuant to a final order of removal. Elashi does not contest the removal order. Elashi had filed his § 2241 petition, which was

2

granted, because his continued detention pending removal was in violation of the Immigration and Nationality Act.  See 8 U.S.C. §1231(a)(6).

Elashi was imprisoned pursuant to ICE custody for approximately 11 months when he filed his petition.  He sought permission to enter from more than 40 countries, and was denied by all, including Israel, Jordan and Egypt.  Because of the complicated politics between Palestine and Israel, Elashi could not gain permission to be repatriated to his home territory.   For all of these reasons, the Honorable Malcolm Muir granted his petition, finding that the government had not rebutted Elashi's reasons to believe that there is no significant likelihood of removal in the reasonably foreseeable future.

This history sets the stage for petitioner's motion for attorneys fees and costs pursuant to the EAJA.  The EAJA states, in relevant part,:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action. . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*****

> . . . Whether or not the position of the United States was substantially justified shall be determined on the basis of the record. . .

*****

> The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award. . .

*****

> "[F]ees and other expenses" includes. . . reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that. . . a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. 2412(d)(1)(A)-(D).

Petitioner argues that the Government's position was not substantially justified because, according to petitioner, it was contrary to precedent. Thus, petitioner is requesting $49,847.37 in attorney's fees and $302.88 in other expenses. The government argues that its position was substantially justified based on a reasonableness test set forth by the Third Circuit, that Elashi is not entitled to attorney's fees greater than the statutory maximum rate (adjusted for inflation), and that the fees are excessive as several clerical tasks were billed at an attorney's rate.

<u>The government's position was not substantially justified</u>

There is not much guidance on the issue, "because the number of possible situations is large, [the Supreme Court is] reluctant either to fix or sanction narrow guidelines for the district courts to follow." <u>Pierce v. Underwood</u>, 487 U.S. 552, 63

4

(1988). However, both parties rely, *inter alia*, on Hanover Potato Products, Inc. v. Shalala, in their briefs. 989 F.2d 123 (3d Cir. 1993). Thus, we too turn to Hanover Potato. "Substantial justification under the EAJA has been defined by the Supreme Court as "justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person."" Id. at 128 (internal citations omitted). "Alternatively phrased, an agency position is substantially justified if it has a reasonable basis in both law and fact." Id. "The burden of demonstrating substantial justification for its position rests squarely on the government agency." Id. The government must show 1. a reasonable basis in truth for the facts alleged; 2. a reasonable basis in law for the theory it propounded; and 3. a reasonable connection between the facts alleged and the legal theory advanced. See id. The government's 'position' includes both its litigation and pre-litigation positions. "Thus, unless both the agency's litigation and pre-litigation positions meet the [] three-part criteria [], the government's position is not substantially justified." Id, (internal citations omitted).

Petitioner argues that neither the government's litigation position, nor ICE's pre-litigation and litigation position were justified. Petitioner argues that the government's litigation position was not justified because it presented no information to suggest that Elashi's removal was reasonably foreseeable, the

government was aware of the significant obstacles to Elashi's removal and the government did not present other reasons that Elashi should be detained, other than his pending removal.  Petitioner argues that ICE's position was not substantially justified because ICE continued to detain Elashi without producing any significant evidence of the likelihood of Elashi's removal, with the knowledge of the efforts Elashi had made in attempting to gain entry into another country.

Although the burden is on the government to prove that its position was substantially justified, its brief was full of citations to the law, but little in the way of argument. The government, although it cited to the three-part test, did not meet its burden of satisfying it. The government's brief is surprisingly lacking in the way of substantive argument. The government's only arguments are that because it believed that removal was reasonably foreseeable and because of the nature of Elashi's underlying criminal conviction, its position was substantially justified.

Elashi's detention was squarely controlled by <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S. Ct. 2491 (2001).  We will not rehash the reasoning of the Honorable Malcom Muir in his opinion granting Elashi's habeas petition which orders his release from ICE detention, but the government's and ICE's pre-litigation and litigation positions were not substantially justified.  Elashi requested entry to 41 countries and was denied entry to all.  The government's only argument that it was

substantially justified in believing that removal was still reasonably foreseeable is just that - the government asks us to hold that it was substantially justified because it says it was. Today, we hold that it's position was not substantially justified because after 6 month's detention, during which 14[1] countries, including Elashi's territory of birth and his wife's birth country denied him travel documents, Elashi's removal was certainly not 'reasonably foreseeable.' See e.g. Kholyavskiy v Schlecht, 479 F. Supp. 2d 897 (E.D. WI February 9, 2007) (Adelman, J.) (holding that the government's position was not substantially justified in detaining petitioner past the presumptively reasonable six-month period when Russia, the country of petitioner's birth, refused to admit petitioner).

The government has not met its burden of demonstrating substantial justification.

### Rate for fees

The EAJA states, in relevant part:

> "[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonably cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing

---

[1] It appears from Judge Muir's opinion that by October 2009 Elashi had been denied entry to 14 countries; by January 2010 he had been denied by 41 additional countries.

7

market rates for the kind and quality of the services furnished, except that (I) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States: and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. §2412(a)(2)(A).

Petitioner is requesting reimbursement for the work of four attorneys:

Elizabeth Badger, Esquire, was, at the time of the litigation, the Refugee and Detention Litigation Director at the World Organization for Human Rights in Washington, D.C. (Rec. Doc. No. 22-4 at 2). Badger was graduated from law school in 2005, and has specialized in immigration law since her graduation. (Id). Badger's declaration indicates that the lodestar in District Columbia for attorneys with four to seven years of experience is $270 per hour. (Id. at 3). Badger is requesting fees at the EAJA statutory rate adjusted for inflation. (Id). She is requesting $170.76 for work she completed in 2009 and $174.72 for work she completed in 2010. (Id).

Susan M. Akram, Esquire, is a Clinical Professor at Boston University School of Law and a Supervising Attorney in the Boston University Civil Litigation Program. (Rec. Doc. No. 22-5 at 2). Akram was graduated from law school in 1982. (Id). In 1996 she received a *Diplome* in international human rights from the *Institut International des Droits del'Homme* in Strasbourg, France. (Id).

8

She started her career at a law firm in San Francisco.(Id). From 1985-1989 she worked as the founding director of the Immigration Project at a public interest law firm. (Id). From 1989-1993 she was the founding director of the Political Aylum/Immigration Representation Project in Boston. (Id). She has been teaching at Boston University Law School since 1993. She has spent twenty-six years working in immigration and asylum law, international refugee law and international human rights law. (Id. at 3). Akram asserts she has "a particular expertise in Palestinian refugee cases and international law relating to Palestinians as refugees, displaced and stateless persons. (Id). Akram has been traveling to what she refers to as the "Occupied Palestinian Territories" and surrounding countries doing legal work since 1988 . (Id). She has well-known scholarly articles on reinterpreting the international refugee provisions governing Palestinian refugees and stateless claims. (Id). She is regularly asked to be counsel, co-counsel or an expert witness in Palestinian asylum or refugee cases. (Id). She has presented on these issues to many audiences, including United Nations committees, the European Union, and representative of European and Canadian governments. (Id. at 4). She was a senior Fulbright Scholar in the West Bank from 1999-2000. She has taught at a Palestinian school of law. (Id). Akram is requesting fees at the rate of $350 per hour, which Akram asserts is the prevailing wage for attorneys with

her years of experience, regardless of specialty or expertise.

Jennifer Klein and Emily Tucker, were, at the time of this litigation, third-year law students at Boston University School of Law. (Rec. Doc. Nos. 22-7 at 2 and 22-8 at 2). They were both part of the Civil Litigation Program practicing under Professor Akram.(Id). They are each requesting fees at the same rate as paralegals at Greater Boston Legal Services, which houses Boston University's Civil Litigation Program. (Id). According to the Director of Litigation at Greater Boston Legal Services, paralegal work is billed at $100 per hour. (Rec. Doc. No. 22-6 at 2).

The government agrees with petitioner that the statutory rate for attorney fees, adjusted for the cost of living, is $170.76 for work performed in 2009 and $174.72 for work performed in 2010. So it is agreed that reimbursement for Attorney Badger should be paid at this rate. However, the government argues that there is no special factor to justify increasing the fees higher than this for Attorney Akram. The Supreme Court addressed the issue of determining what the term 'special factor' means in Pierce v Underwood. 487 U.S. 552 (1988). The court stated that "limited availability of qualified attorneys for the proceedings involved" does not mean a short supply of lawyers skilled or experienced enough to handle the case, because that would effectively limit the statutory cap. See id. at 571.

Congress did not mean "that if the rates for all lawyers in the relevant city – or even in the entire country come to exceed [$125] per hour (adjusted for inflation), then that market-minimum rate will govern instead of the statutory cap." Id. at 572. "To the contrary, the "special factor" formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be." Id. The court held that "special factor" "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." Id. "Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." Id. "Where such qualifications are necessary and can be obtained only at rates in excess of the [$125] cap, reimbursement above that limit is allowed." Id.

Petitioner, inexplicably, does not cite to any case law applying the EAJA in requesting an increase from the statutory amount in arguing that Attorney Akram is entitled to an increased amount of fees. Petitioner cites to Massachusetts law and the law expounding on 28 U.S.C. § 1988. § 1988 is intended to cover reimbursement from the government in civil rights cases, and has a different standard for the rate of reimbursement. The EAJA specifies a statutory suggested

reimbursement amount, $125 adjusted for cost of living, and clearly is the statute we should consider in determining the amount of fees for Attorney Akram.

Although Akram is incredibly specialized and experienced, petitioner fails to explain how her particular expertise was necessary to the instant litigation. It seems the case turned on issues of Zadvydas and its progeny. Although petitioner provided an affidavit from the Legal Director of the American Arab Anti-Discrimination Committee explaining the difficulty in finding pro bono counsel capable of litigating issues particular to Palestinians, the habeas petition at issue here was not an issue particular to Palestinians. As the issue was Zadvydas and its progeny, the petitioner could have been from any country. See also Johnson v. Gonzales, 416 F.3d 205 (3d Cir. 2005) (holding that the attorney for a Liberian citizen seeking asylum in the United States was not entitled to an increased reimbursement over the EAJA statutory rate because it was not a case that required research into little known-areas of immigration law or Liberian culture, but one of substantial evidence and asylum factors.) Because the work required on this case did not require the specialized experience of Attorney Akram, we will limit her reimbursement award to that of the statutory rate plus the cost of living increase.

Although the government does not attack the request for fees for the two student attorneys, Klein and Tucker, we felt it necessary to address the fees

requested by the students, both third-year law students at the time. The student attorneys are each requesting fees at the same rate as paralegals at Greater Boston Legal Services. The students were working on this case as part of the Civil Litigation Program at Boston University School of Law. Petitioner's brief cites to two cases in which other district courts have granted attorney fee awards for the work of law students. However, these cases are not on point because the students in those cases were being reimbursed as paid employees at a law firm, as opposed to students in a law school civil litigation program presumably earning credit for their work, and the cases were not EAJA cases. Here, the students were part of a law school's civil litigation program seeking fees pursuant to the EAJA. Regardless, it appears that in this circuit, a legal service organization can obtain a fee award for the work of uncompensated law-students, regardless of their receipt of academic credit for their services. See Barry v. Astrue, 121 Soc. Sec. Rep. Service 60, *22 (E.D. Pa. 2007) (Yohn, Jr. J.), DiGennaro v. Bown, 666 F. Supp. 426, 431 (E.D. Pa. 1987) (Mishler, J). Because the government did not object to the $100.00 an hour rate requested for the work of Klein and Tucker, the court will allow reimbursement for the work of these two student attorneys at the requested rate.

    Attorney Badger will be reimbursed at a rate of $170.76 per hour for work

performed in 2009 and $174.72 per hour for work performed in 2010.  Attorney Akram will be reimbursed at a rate of $170.76 per hour for work performed in 2009 and $174.72 per hour for work performed in 2010. Student attorneys Klein and Tucker will be reimbursed at a rate of $100.00 per hour.

## Amount of fees and expenses

Having determined the rate at which the attorneys are due reimbursement, we turn now to a determination of the amount of fees and expenses that will be awarded.  ""[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonably cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees. . ."  28 U.S.C. §2412(a)(2)(A).

The government disputes some of Attorney Badger's requests arguing that some of the work was on clerical tasks that should not be billed at an attorney's rate, that some work was not necessary to the litigation and that excessive time was spent on other work.  Petitioner argues that the clerical work had to have been performed by Badger because as a legal services attorney, she does not have support staff to perform this work.  Petitioner further argues that she had to spend more time than is typical on some tasks because of the significant review and oversight it takes to supervise representation by student attorneys.

14

We do not agree with either of petitioner's arguments. If not having a clerical staff was a valid reason for charging clients for attorneys to perform clerical work such as "packaging attachments" and "scanning and numbering exhibits," paralegals and secretaries would be out of a job because attorneys around the country could charge clients for this type of work at an attorney's rate. We will strike the $3,937.38 requested for the clerical work performed by Badger.

As to the request for extra fees for supervising the work of student attorneys, petitioner cannot have his cake and eat it too. The work of the student attorneys who are presumably earning school credit as part of the clinic is already being reimbursed. To charge the government for the work of the student and the work of the supervising attorney on the same task is duplicative. Because petitioner only argued that the time was necessary to check the work of the students and did not argue that the time was spent solely by Badger on any of these tasks, we will accept the suggestion of the government that we reduce the award for the disputed tasks by 50%.

**CONCLUSION:**

Petitioner's motion is granted to the extent of the relief provided in this memorandum and order. Petitioner will be awarded $37,434.60. The award is based on $302.88 for costs and expenses, $25,195.05 for the work performed by

15

Attorney Badger, $4,353.34 for the work performed by Attorney Akram, $4,658.33 for the work performed by student attorney Klein and $2,925.00 for the work performed by student attorney Tucker.

s/James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BAYAN ELASHI | : | Civil Action No. 4:09-CV-2201 |
| | : | |
| Petitioner, | : | (Judge McClure) |
| | : | |
| v. | : | |
| | : | |
| MARY E. SABOL, | : | |
| JANET NAPOLITANO, | : | |
| JOHN T. MORTON, | : | |
| DAVID VENTURELLA, | : | |
| CHERYL CRENSHAW, and | : | |
| THOMAS DECKER | : | |
| | : | |
| Respondents. | : | |

## ORDER
November 2, 2010

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Petitioner's "Motion for Attorney Fees Pursuant to EAJA" is granted, but only to the extent of relief provided in the accompanying memorandum. (Rec. Doc. No. 22).

2. Petitioner is awarded $37,434.60 in attorney's fees and costs.

            s/James F. McClure, Jr.
            JAMES F. McCLURE, JR.
            United States District Judge